# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TEODORO CAMPOS RAYO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:14CV326 |
| | ) |
| FRANK L. PERRY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On November 7, 2011, in the Superior Court of Durham County, Petitioner pled guilty to trafficking in cocaine by possession of 200 to 400 grams, trafficking in cocaine by transportation of 200 to 400 grams, and conspiring to traffic 200 to 400 grams of cocaine, in cases 11 CRS 074156, 074157, and 074159, and the trial court sentenced Petitioner to 70 to 84 months imprisonment. (See id., ¶¶ 1-6; Docket Entry 2-1 at 13-14.)[1] He did not appeal. (Docket Entry 2, ¶ 8.)

On August 29, 2013, Petitioner filed a Motion for Appropriate Relief ("MAR") in the trial court. (See id., ¶ 11(a); see also id.

---

[1] The Petition indicates that Petitioner proceeded to a bench trial (see Docket Entry 2, ¶ 6(c)); however, it appears Petitioner misunderstood the question or made a typographical error as he previously acknowledged that he had pled guilty (see id., ¶ 6(a)), and other filings clarify that he did not go to trial (see, e.g., Docket Entry 2-1 at 5-12).

at 38-59.)  The trial court denied the MAR on September 27, 2013. (Id., ¶ 11(a); see also id. at 33-37.)  Petitioner then filed a Motion for Reconsideration on October 23, 2013.  (Id. at 27-32.)[2] On October 30, 2013, the trial court denied that motion.  (Id. at 26.)  Petitioner then sought certiorari review with the North Carolina Court of Appeals on January 6, 2014.  (See id., ¶ 11(b); see also id. at 12-25.)  The North Carolina Court of Appeals denied that petition on January 23, 2014.  (Id. at 11.)

Finally, Petitioner signed the instant Petition, under penalty of perjury, and dated it for mailing on April 14, 2014 (id. at 10), and the Court stamped and filed the Petition on April 17, 2014 (id. at 1).[3]  Respondent filed a Motion for Summary Judgment (Docket Entry 5), and Petitioner responded (Docket Entry 8).  For the reasons that follow, the Court should grant Respondent's instant Motion because Petitioner submitted his Petition outside of the one-year limitations period.[4]

---

[2] Petitioner dated the Motion for Reconsideration on October 21, 2013, but the trial court did not file it until October 23, 2013. (Compare Docket Entry 2 at 31, with id. at 26.)  As either date leads to a recommendation of dismissal, the undersigned need not address the issue of what date controls.

[3] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on April 14, 2014, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 2 at 10.)

[4] Because the Petition qualifies as untimely, the undersigned need not address Respondent's alternative argument.

## Petitioner's Claims

The Petition raises five grounds for relief: (1) "Grossly [d]isproportionate [s]entence and [c]ruel and [u]nusual [p]unishment" (Docket Entry 2 at 3); (2) "Violation of [d]ue [p]rocess by denying [Petitioner] consular visits [under] Article 36 of the Vienna Convention" (id. at 4); (3) "Ineffective [a]ssistance of [c]ounsel" (id. at 5) because counsel failed to investigate the criminal matters to the fullest, did not object to the State's factual basis, failed to advise him of his right to appeal, failed to appeal, failed to contact Petitioner's consul, failed to move for suppression of evidence, failed to withdraw from representation, and coerced Petitioner into a guilty plea (id. at 46-49); (4) "Invalid and unknowing guilty plea" (id. at 5) because there was not a factual basis for the plea, the traffic stop was made without reasonable suspicion, the State performed an illegal search, the State racially profiled Petitioner, the confidential informant did not testify, Petitioner never admitted his guilt, and counsel promised Petitioner a sentence not to exceed 35 to 42 months (id. at 50-51);[5] and (5) "Violation of the Equal Protection Clause by denying [r]etroactivty of the law" (id. at 6),

---

[5] The Petition joins both Grounds 3 and 4 into one ground, but Petitioner listed them separately in his MAR and certiorari petition. (Compare Docket Entry 2 at 5, with id. at 16, 46, 50.) Given that Petitioner purports to incorporate his state collateral filings into the Petition (see, e.g., id. at 3), the undersigned has separated these Grounds.

3

specifically North Carolina General Statute Section 15A-1340.18 (id. at 23).[6]

**Discussion**

Respondent moves for summary judgment on the merits of the Petition (Docket Entry 6 at 2-13) and for untimeliness (id. at 13-20). In order to assess Respondent's statute of limitations argument, the undersigned must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> > (A) the date on which the judgment became final by the conclusion of direct review or

---

[6] Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts "explicitly requires that a petitioner summarize the facts supporting each of the alleged grounds for relief." Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990). Thus, a habeas petitioner who generally references allegations raised in other case records and briefs "patently fail[s] to comply with Rule 2(c)." Id. Federal courts need not "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." Id. (citing Williams v. Kullman, 722 F.2d 1048, 1051 (2d Cir. 1983)). The particularized facts which entitle a petitioner to habeas relief "must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." Id. at 334. Petitioner flagrantly violated this Rule with his repeated citations to the entire record. (See, e.g., Docket Entry 2 at 3 ("Petitioner retakes [sic] his claim of grossly [d]isproportionate and [c]ruel and unusual [p]unishment as stated in his collateral attacks and incorporates them hereto as a reference[.]").) Despite such violations, the undersigned has reviewed the entire record for purposes of assessing the statute of limitations issue.

4

the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Neither Petitioner nor Respondent contends that subparagraphs (B) or (C) apply in this case (see Docket Entries 2, 4, 5, 6, 8, 9), but Petitioner does assert that subparagraph (D) applies (see Docket Entry 8 at 3). Moreover, Petitioner asserts, for reasons detailed below, that the statute of limitations should not prohibit the Court from addressing the merits of his case. (See Docket Entry 2 at 9; Docket Entry 8.) Thus, the undersigned must first determine which subparagraph applies in order to decide when the statute of limitations commenced.

Under subparagraph (D), the one-year limitations period begins when the factual predicate of a claim "could have been discovered

through the exercise of due diligence," not upon the actual discovery of any claim. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance."). Although Petitioner contends that subparagraph (D) applies, he does not elaborate on the reasoning for its application to his grounds of relief or identify the grounds to which it should apply. (See Docket Entry 8.) Rather, Petitioner mainly argues the need for equitable tolling of the statute of limitations and challenges Respondent's arguments on the merits. (Id.)

The Petition does allege that "Petitioner has dilligently [sic] search[ed] for his entire file and he has discovered new[] evidence which [is] [m]aterial to this case to prove his innocence." (Docket Entry 2 at 9.) However, such conclusory allegations do not support application of subparagraph (D). See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged Brady materials earlier); Farabee v. Clarke, No. 2:12-cv-76, 2013 WL

6

1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain his inability to discover the factual predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); Norrid v. Quarterman, No. 4:06-cv-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that the petitioner had the burden of demonstrating the applicability of subparagraph (D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Thus, Petitioner has not borne "the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006).

Nevertheless, in an abundance of caution, the undersigned will review the applicability of subparagraph (D) to Petitioner's claims. At the time Petitioner pled guilty, he either knew or through due diligence should have known (1) the length of his sentence for purposes of determining whether it qualified as grossly disproportionate; (2) whether he had received a consular visit in accord with Article 36 of the Vienna Convention; (3) whether his counsel: investigated the facts underlying Petitioner's crimes, objected to the State's factual basis, advised Petitioner

7

of his right to appeal, contacted Petitioner's consul, motioned to suppress evidence, attempted to withdraw from representation, and coerced Petitioner into signing a plea agreement; and (4) whether the State presented a factual basis for Petitioner's guilty plea, the nature of the traffic stop, the basis for any claim of racial profiling, whether the confidential informant testified, if Petitioner admitted his guilt, and if the sentence imposed matched the sentence promised to Petitioner.

As a result, only two possible claims for application of subparagraph (D) remain. The first lies within Ground 3, i.e., whether counsel failed to file an appeal. As North Carolina allows a party to file an appeal within fourteen days of judgment, see N.C.R. App. 4(a)(2), Petitioner would not have known the factual basis for this claim at the time he pled guilty. Thus, subparagraph (D) conceivably applies to this claim for relief. The Court therefore must determine when Petitioner could have discovered the factual predicate for this claim, i.e., when he should have discovered that his counsel failed to file an appeal.

Courts have used various time periods to determine when a petitioner should have reasonably discovered that his counsel failed to file an appeal. See Ryan v. United States, 657 F.3d 604, 607 (7th Cir. 2011) (collecting cases). This Court need not now adopt a per se reasonable period, as even under the longest period of time allowed that the undersigned could find, five months, see

Wims v. United States, 225 F.3d 186, 190-91 (2d Cir. 2000), the Petition still qualifies as untimely. Applying a delay of five months means Petitioner should have reasonably discovered that his counsel failed to appeal by the end of April 2012, and from there, the one-year limitations period began and ran unimpeded until its expiration in late April 2013. Petitioner took no action until August of 2013 when he finally filed his MAR. (See Docket Entry 2, ¶ 11(a); see also id. at 38-59.) Therefore, even under subparagraph (D) this claim for relief remains untimely.[7]

The second (and final) possible claim as to which subparagraph (D) might pertain lies in Ground 5, wherein Petitioner contends North Carolina General Statute Section 15A-1340.18, as modified by the Justice and Reinvestment Act of 2011, retroactively applies to his case. (See Docket Entry 2 at 23, 52-55.) Because Section 15A-1340.18 did not go into effect until January 1, 2012 (after Petitioner had pled guilty), see N.C. Sess. Law 2011-192, he could

---

[7] In any event, this claim would fail as a matter of law, based on its conclusory nature. See Whitely v. United States, Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C. Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J., adopted by Beaty, S.J.) ("Unsupported, conclusory allegations do not warrant an evidentiary hearing, much less relief. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999)."); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[A] habeas petition is expected to state facts that point to a real possibility of constitutional error . . . . Thus, vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)).

not have utilized Section 15A-1340.18 as a basis for relief until its effective date. At the time Section 15A-1340.18 went into effect (and indeed until August 2013), Petitioner had not filed his MAR. The statute of limitations for Ground 5 thus ran, unimpeded, from January 1, 2012, until its expiration on January 1, 2013. Therefore, Petitioner filed his Petition, with respect to Ground 5, untimely.[8]

As to the remaining grounds for relief, under subparagraph (A), Petitioner's conviction became final, for purposes of the statute of limitations, no later than November 21, 2011 - the final day on which he could have appealed his convictions. See N.C.R. App. P. 4(a)(2) (requiring a notice of appeal within fourteen days of the entry of judgment); see also Gonzalez v. Thaler, __ U.S. __, __, 132 S. Ct. 641, 653-54 (2012) (holding that a petitioner's case becomes final when the time for pursuing direct review expires).[9] The statute of limitations then ran on Petitioner's remaining

---

[8] Even if the Court reached the merits of this ground, it would still fail. As previously held, the Justice Reinvestment Act of 2011 does not operate retroactively and its failure to do so does not violate the Equal Protection Clause. See Minton v. Perry, No. 1:12CV497, 2014 WL 5605632, at *6-7 (M.D.N.C. Nov. 4, 2014) (unpublished). Moreover, to the extent Petitioner relies on actions allegedly taken by President Obama or the United States Congress (see Docket Entry 2 at 23; Docket Entry 8 at 9-10, 12), the State convicted Petitioner for his underlying crimes, so federal drug laws do not apply.

[9] Because Petitioner pleaded guilty, he likely possessed no right to appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty).

10

grounds from November 21, 2011, until its expiration on November 21, 2012. Petitioner did not file his instant Petition until April 14, 2014. (Docket Entry 2 at 10.) Thus, Petitioner filed his Petition well beyond the one-year limitations period. Although Petitioner filed a MAR in state court, by that point, the statute of limitations had already run, and the belated filing could not revive the already expired one-year limitations period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after the federal limitations period do not restart or revive the federal limitations period).

Despite the instant Petition's untimeliness, Petitioner requests the Court to address his claims on the merits. (See Docket Entry 2 at 9; Docket Entry 8 at 3-12.) Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations for habeas claims, see 28 U.S.C. § 2244(d)(1), a court can equitably toll that limitations period, see Holland v. Florida, 560 U.S. 631, 634 (2010). Equitable tolling requires that Petitioner demonstrate that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing. Id. at 649. Equitable tolling involves a case by case analysis. Id. at 649-50.

Here, Petitioner argues Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911 (2013), and Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), provide an exception to the statute of limitations;

11

further, he claims actual innocence, lack of legal fluency, denial of assistance by North Carolina Prisoner Legal Services, and lack of access to a law library as reasons to toll the statute of limitations. (Docket Entry 2 at 9; Docket Entry 8 at 4-8.) The undersigned will address each argument in turn.

In Trevino and Martinez, the Supreme Court held that where petitioners, under state law or as a matter of practice, cannot claim ineffective assistance of counsel on direct review, the procedural default rule will not prevent a federal court from reaching the issue if petitioners had either no counsel or ineffective counsel in the initial-review collateral proceeding. Trevino, 133 S. Ct. at 1921; Martinez, 132 S. Ct. at 1320. Neither case even addressed statute of limitations issues, contrary to Petitioner's assertions (see Docket Entry 8 at 4). See Trevino, 133 S. Ct. at 1911; Martinez, 132 S. Ct. at 1309. Thus, Trevino and Martinez provide no assistance to Petitioner. See Arthur v. Thomas, 739 F.3d 611, 630-31 (11th Cir.) (holding that Martinez and Trevino do not affect habeas statute of limitations), cert. denied, __ U.S. __, 135 S. Ct. 106 (2014).

Petitioner also contends that his actual innocence ought to prevent application of the statute of limitations. (Docket Entry 2 at 9; Docket Entry 8 at 6-8.) The United States Supreme Court has recognized that a showing of actual innocence may excuse noncompliance with the one-year limitations period. McQuiggin v.

Perkins, \_\_\_ U.S. \_\_\_, \_\_\_, 133 S. Ct. 1924, 1928 (2013). However, the Court also ruled that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. In this case, Petitioner puts forth only a copy of a laboratory report created in his underlying criminal case (Docket Entry 2-1 at 1) and letters of support (id. at 15-18) as evidence of his innocence. This material does not show that "'it is more likely than not that no reasonable juror would have convicted [Petitioner],'" McQuiggin, 133 S. Ct. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Petitioner's final arguments - that he lacks legal fluency, North Carolina Prisoner Legal Services denied assistance, and he lacks access to a law library - do not provide a sufficient basis for tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("[I]gnorance of the law is not a basis for equitable tolling."); Johnson v. Beck, No. 1:08CV336, 2008 WL 3413303, at *4 (M.D.N.C. Aug. 8, 2008) (refusing to toll when prisoner did not have access to a library, but did have access to North Carolina Prisoner Legal Services), recommendation adopted, slip op. (Docket Entry 17) (M.D.N.C. Feb. 12, 2009); Rhew v. Beck, 349 F. Supp. 2d 975, 978 (M.D.N.C. 2004) (Osteen, Sr., J, adopting recommendation of Eliason, M.J.) (refusing to toll when prisoner cited delays by North Carolina Prisoner Legal Services), appeal dismissed, 158 F.

13

App'x 410 (4th Cir. 2005) (unpublished). Additionally, Petitioner provides no support for these contentions beyond his own conclusory allegations. (See Docket Entry 8 at 7.) "Mere conclusory allegations are insufficient to raise the issue of equitable tolling." San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011). Furthermore, Petitioner's ability to file his MAR and certiorari petition in state court notwithstanding the cited conditions undermines his request for tolling.

As a final matter, the Court should note that, in addition to untimeliness, the Petition largely qualifies as facially frivolous. For example, Petitioner complains that his counsel promised him a sentence that would not exceed 35 to 42 months in prison. (Docket Entry 2 at 49.) However, Petitioner's plea transcript (printed in both English and Spanish) clearly contradicts his argument. The plea transcript lists the charges against Petitioner as well as the maximum punishment for each charge - 84 months. (See Docket Entry 2-1 at 6, 11.) The plea transcript also lists 70 months as the minimum sentence that Petitioner could receive. (See id. at 6.) Moreover, the plea transcript contains a section entitled "PLEA ARRANGEMENT / ACUERDO NEGOCIADO CON EL FISAL" that states: "the charges shall be consolidated for judgment purposes. (70 - 84 months active imprisonment)." (Id. at 8.) Finally, Petitioner agreed that the plea arrangement described represented the correct agreement. (Id. at 8.) Petitioner, as well as a translator,

signed the plea transcript, indicating that Petitioner understood it. (Id. at 9.) Petitioner's current, unsupported contention that his counsel promised him a different sentence fails before such evidence. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Similarly, Petitioner's argument that he did not admit his guilt also cannot stand as, once again, Petitioner's plea transcript belies this unsupported contention. In the plea transcript, in response to the question "[a]re you in fact guilty?" Petitioner responded, "yes." (Docket Entry 2-1 at 7.) Simply put, the plea transcript renders frivolous many of Petitioner's claims.

In addition, Petitioner incorporated into his Petition the allegation within his MAR that law enforcement and medical reports indicated that the State did not find Petitioner's semen, and that the victim's hymen had not been touched. (Docket Entry 2 at 47.) Clearly, such argument bears no relevance to Petitioner's drug convictions,[10] unduly burdens the Court, and demonstrates the frivolousness of the Petition, even apart from its untimeliness.

---

[10] In fact, it appears Petitioner copied that portion of his Petition, verbatim, from a petition in another case. (Compare Docket Entry 2 at 46-48, with Perez v. Perry, No. 1:14-cv-311-JAB-LPA (Docket Entry 2-2 at 21-23) (M.D.N.C.) (containing the same three pages).)

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be granted, that the Petition (Docket Entry 2) be denied, and that Judgment be entered dismissing this action, without issuance of a certificate of appealability.

                                    /s/ L. Patrick Auld
                                    **L. Patrick Auld**
                            **United States Magistrate Judge**

February 9, 2015